The final matter, number 25-1360, Edervaldo Rodriguez da Silva versus Jessica Silveira da Silva. At this time, would counsel for the appellant please introduce herself on the record to  Good morning, Your Honors, and may it please the Court. My name is Leah James on behalf of Respondent Appellant Jessica Silveira da Silva. And before I begin, I'd like to reserve one minute for rebuttal, please. You may. Here in this case, the District Court committed legal error by comparing the life of the minor child in Brazil to his life in the United States. And this error affected at least two of the four factors that ultimately counseled against the finding that the child was well settled here, changing the outcome of the case. The District Court also committed clear error by, instead of properly considering and weighing the evidence, ignoring large swaths of evidence to come to her conclusion that the child was well settled. The correct standard for determining whether a child is well settled under the Hague Convention is whether, when considering the totality of the relevant circumstances, there is substantial evidence of the child's significant connections to the new country. This standard, notably, does not speak to anything about a comparison between the connections in the new country and the connections in the prior country. It must be evaluated based on the life of the child and their connections to, in this case, the United States. How does that square with what we said in De Silva, where part of what we said in upholding it was that the District Court had determined that because of the resiliency of the child and the adaptability of the child, it wouldn't be wrenching for them to go to Brazil, given their ties in Brazil? So I think, Your Honor, what that speaks to is not a comparison between what the child's life used to look like and what it looks like now. What it speaks to is the purpose of the reason that the well settled defense exists in the first place, which is that the consideration there should be that at a certain point in time, a child has become so settled, by virtue of their significant connections to the United States, that removal back to their prior country, regardless of what their... That's what I just was puzzled in De Silva. Why would we think it mattered how resilient the child was? That doesn't seem to have anything to do with the quality of their ties here. It just would seem to have to do with how well they'll do, notwithstanding those ties, in a new place. I think it speaks back to the idea of whether there would be harm to the child from their removal. But I thought that you were rightly saying that that's supposed to be based entirely on the quality of the ties, not how the child will fare in the new place. Respectfully, Your Honor, I would say that perhaps in De Silva, what the consideration was, was whether the ties in the United States were so significant, such that the child would be harmed in going back to Brazil. Not that the conditions in Brazil would then lead him to suffer harm. And so now, here, unlike in De Silva, De Silva is a case with a child who was in school for quite a long period of time, and was attending lots of parties, but less absences than the child here. I think it's three years compared to two years. Is that right? I think you're reversing, Your Honor. Here, the child was in his third year of school at the time of trial. De Silva, I believe, I was counsel in that case, the child was maybe six at the time of trial and was in his second year of school, and I don't believe there were absence issues in that case. There were lots of absences. There were lots of tardy issues, and then there were absences that were less frequent than the absences here. Yes. So to – Counsel, you mentioned, obviously, the bulk of your argument, which you asked, the legal argument, is that, again, Judge Burroughs, and it's clear from the transcript she did mention this young boy lived in Brazil, but, you know, when you look at it in context, and particularly looking at the opinion, when she goes fact by fact by fact, to me it appears to be more like background evidence or information, but not what – she's not saying I'm relying on this because he lived in Brazil for eight years and only two here. She's not making any of those factors. Again, it appears to be more background. I don't know what you have to say about that. Yes. So respectfully, I would disagree with that. She – this comparison comes up in the context of evaluating the child's duration and stability of his residence, and one of the elements that the court can and did consider there is the strength of the child's connections and familial support in the United States. Right. So this gets to what concerned me, which is that it really seems like what she's saying is these people here are really relatives of the stepfather. Correct. That has a certain potential transience to it, and there are the mother and father's families are all in Brazil, and that seems like a relevant background fact, not so much as comparison, although this gets a little fuzzy in my mind, but to say that what's here does have a certain uncertainty to it, and I, the judge, sort of grab onto that when I think about these aren't the relatives. These are the husband's relatives, and that's really what she was getting at. I agree. Not the greatest written sentence to get that, but that sort of seemed to be the gist of it. So I think there's a couple points I'd like to make on that. The first is that there isn't actually any evidence in the record and none in the order relied on by the judge, even if she were making that comparison of the strength of the relationships in Brazil with anybody except the father. That would have been an error for her to start saying the grandparents are there, the uncles, his BFFs. That would have been, if Judge Burroughs had done that, I think I'll ask counsel if they'll think I was that quick, but maybe that's definitely a reversal, but she's not doing that. I agree with you, but the fact remains that there is none of that evidence in the record even to be considered. What is the point? We have two different things going because you have two different arguments, which you're entitled to make. Yes. One of which is the legal error the district court was doing this comparison. The other is just a straight-up clear error argument that the record just doesn't support a conclusion they're not settled. I'm not aware of precedent that suggests if you are otherwise settled, and I know that's a tempting way of putting it, but that if you are otherwise settled, the fact that you don't have ties to relatives besides your primary parent, you may have no cousins, you may have no siblings, and maybe a single mother, that that means you can't be settled. It certainly can be a factor in the analysis, Your Honor, but this goes back to my second piece of my response to Judge Ephraim, which is that there is actually significant case law support for the idea that it doesn't need to be your biological relative. There's plenty of cases where it's a stepfather, a stepfather's extended family. I don't think that's an issue in Judge Burroughs. She's saying she does have some bonds. She meets with these people, and she's going detail by detail by detail. For example, in the case of the stepfather, she said, yes, it's maybe not the most concrete relationship, but she does recognize there is a relationship. Again, this is going to the clear erroneous facts. She seems to very meticulously go one by one by one by one by one by one and make her own weight of the evidence determinations. And she's even saying, you know, the mother is, you know, it's not an issue. I don't believe her. She's weighing the evidence with what she's doing. And respectfully, I think that some of those things that you just pointed out are not actually factual findings that should be reviewed on clear error. They have to do with this error in the legal standards, so particularly when you're talking about the relationship with the stepfather. When she's talking about his relationships with his family and friends in the United States, she explicitly refers back to earlier in the order and says, as stated before, that's what the court says, as stated before, the district court is not convinced as to the strength of these relationships. And the reason that the district court was not convinced as to the strength of those relationships going back to earlier in her order was because she compared the length of those relationships to the length of the relationships in Brazil. But let's say, I'm asking a different question. So you have a child who goes to school for three years every day with absences, to be sure, but with 90% of the school day each year the child's in school with a consistent home and has an extracurricular activity they participate in, goes to church in the community, and that's over the course of three years or two years, going into the third year. There's no indication that they have a, like in De Silva, severe inability to adjust or adapt, and so that even despite those things it's not plausible to say that they're really adjusted and settled. Why should it matter, I mean this is a favorable question to you, I'm just trying to understand it, why should it matter that they don't have ties to relatives beyond the mother for determining whether they're settled in the country? And I think, Your Honor, this is... It's a bonus, so they, yeah, they're not that close with the stepfather, he could go away, it's some other people, that's not the whole reason to stay here, but he has his mom, and he's in school, and he's got his peer group, and he's got a friend, which is not every kid at that age has a lot of friends, and he goes to soccer practice, he's in church, what's not settled about his experience? And I agree with you, Your Honor, and I think you'll see in our reply brief we make explicit this idea that if you look at the weight of precedent, both within the circuit and in other circuits, that the ultimate conclusion that the district court came to, it's very difficult to square it with the weight of the precedent. This child and his life in the United States looks like the children who have been previously found to be settled in cases, including in cases by Judge Burroughs and by, you know, affirmed by this court. So that is why I keep... In Tecosta, this child's more settled than the child in... Is it Tecosta? Is that the right... Tecosta, yes. Tecosta, this child seems more settled than the child. Now, I don't know what to do with that because we have a clear error standard. We could defer to the district court. They have to make difficult judgments. This is all a very fast time frame. It's very high stakes. I understand that. But I guess I'm trying to understand what is the inquiry even supposed to be when we're dealing with a child who's regularly in school, not moving around a lot, no severe mental problems that suggest that it's a result of incapacity to relate, is learning the language, is doing better each day. To say that's not settled, I guess I have trouble understanding what is settled. And I think this court has a couple of options. There is, while clear error is, of course, a deferential standard, it doesn't mean that it can never be overturned. I think we cited to Tecosta where it says where there's a definite and firm conviction that a mistake has been committed. Did you make the argument below that the child was well settled even if the ties to the stepfather and the relatives were not strong? I think, Your Honor, the argument below was that the child is well settled based on any read of this evidence. You know, it's a little difficult to say did we make an argument that one factor is essential over another. Well, I guess what I'm saying is since a key piece of the district court's ruling is a difference of opinion about the significance of the ties to the stepfather and those relatives, was it clear to the district court that you were saying the child would be well settled even if she disagreed with you on that point? I think it's hopefully made manifest from our briefing that it's our opinion that the child could be well settled on any of these factors. Right? All of these factors, in our opinion, weighed in favor of finding him settled. And so, therefore, even if one of them flipped the other way, as this might have in her mind, the totality of the evidence would have been that he was still settled. Okay. Let me also ask because one of the things that happened in this case, this is obviously not the run-of-the-mill hate convention case for like a month or two after the child was brought, the litigation, you know, and then a year passed. So then the good faith, I mean the well settled defense clicks in. But this case, it's not a year and two months or a little after a year. It's two years. Yes. And does that carry any weight? And, again, looking at the affirmative steps, you know, it seems to me this is not a mother who, again, maybe does not have a permanent place to stay. Maybe stayed with a sister, but her brother-in-law said, no, she can't stay here with the child anymore. She goes somewhere else. She goes to the shelter. She goes X, Y, Z. You know, what else did she have to do? Again, she puts the kid in school. Of course, that age, adapting, you know, it's not the easiest thing. Goes to church. Maybe, you know, it's a judgment call. How are we to, you know, review, you know, because for clearly erroneous purposes, how do we review that? If he goes to church every other week or if he plays soccer, you know, once a week, how do we make that call? I think what the amount of time that he's been in the country speaks to, Your Honor, is the idea that you have to evaluate how settled the child is at the time of the hearing. So the more time that has passed, of course, with a well-adjusted child, as you have here, there's going to be more evidence that the child has adapted and has become settled in his marriage. This is a family that economically they're asking for asylum. They're not financially well off. This is not the person who, you know, has tons of funds and puts the kid, you know, in a private school and has five nannies and driving around and putting them in every activity. You know, we also take into consideration those economic means. Yes, and I think the district court did actually find that there were sufficient economic means. But I agree with your point that taking everything into consideration, it's clear that this child meets the standard of well-settled. And to your point, what else was mother supposed to do in those years? It's actually about the standard of review. I know in De Silva we said it's clear error and we have an explanation of that. On the other hand, there's aspects of De Silva which emphasize, and this is common when we're dealing with mixed questions of fact and law and essentially sufficiency type questions. Sometimes the facts are much more dominant in the thing we're reviewing. So what was the quality of her ties to the stepfather? That seems like a pure fact question. But the question of even accepting the ties or as the district court thought, is a child who doesn't have the kind of mental issues, emotional issues that De Silva emphasized, is in school relatively regularly, 90% of the time, and is such a child settled, that seems to me to sound much more just like the straight-up mixed question of what did we mean by settled, which sounds a lot more like a law question appropriate for de novo review rather than clear error review. How do we deal with that here? We didn't brief this issue mostly because of the DaCosta opinion where it seemed that this court had set out the standard. Respectfully, I would direct the court to Walsh v. Walsh, which was a grave risk of harm case, but it was a similar scenario where the court said there was potentially an error in the legal standard that then led to an error in the ultimate conclusion. And that was not reviewed de novo. This is my first getting into this area of the law. When we talk about settled, do we then flesh that out with, and here's what that means, or is it just sort of like, well, that's a word and good luck, judge. You can just, you know, settle to one. I mean, what do we say about settled? No, it is fleshed out in the case law a bit. So the convention itself doesn't define what it means to be settled. There is guidance from the U.S. Department of State that is what I hearkened back to at the beginning, which is the significant connection. That we would do de novo, what we mean by that. Correct. And then we have applying it to a particular fact situation. Correct. And then there are the historical facts themselves, which you drew from clear error, and then how much. So, I mean, I guess here is that they're in school a lot, but they're absent more than the typical child. So they're in school a lot, they're absent more than a particular child, and they act out in school. So do those things suggest a lack of settlement, and is that the kind of factual judgment that really should be for clear error review? And I want to be clear, because I don't want to mislead the court, that in the past when this court has addressed this issue of the mixed question of law and fact that is the ultimate conclusion of whether a child is settled, that this court has said that it's more like a question of fact than a question of law. Okay, I appreciate that. Thank you. Thank you. Thank you very much. Thank you, counsel. At this time, would counsel for the appellee please introduce himself on the record again? Good morning, Your Honors, and may it please the Court, Charles Hunsinger for the appellee, Petitioner Edervaldo Rodriguez da Silva. Do you mind just moving your microphone a little higher? Of course. Your Honors, the primary issue before the Court today is whether the trial court clearly erred in determining that the minor child is well settled. And to pick up where Attorney James left off, we agree that the burden of proof here is clearly erroneous. Da Silva says whether a respondent has met their burden of proof on an affirmative defense is a mixed question of law and fact, that the reviewing court must determine whether answering this mixed question entails primarily factual or legal work. And here we would submit, as the appellant agrees, that this is primarily factual work. What is the primarily factual point here? The primary factual point here is whether the trial judge clearly erred in No, no, no. I mean, what are the facts in dispute? If we put aside, let's say that we thought district court gets the right to make the decision about the quality versus the transiency of the ties to the stepfather's family. Nonetheless, there is the fact that the child's been here for a substantial period of time in school. Yes, absent, but it's not like, I mean, my child got sick for two weeks. That's ten days right there. So what's factual left, putting aside the stepfather relationships? Isn't it just, is a child who's in school regularly, lives in, roughly speaking, the same place with only one move, same town, in some extracurricular activities, goes to church sometimes, is that a settled child? Why is that a fact question as opposed to primarily a legal one? So, Your Honor, to me the question is whether, the question before you is whether the trial judge clearly erred in entering any of her findings of fact. But let's say we agree with every finding in your favor. Everything, the ties with the stepfather are not strong. It's significant to be absent from school. But at the end of the day, there's like, in your favor, assuming there's no clear error, there's a constellation of facts. And then the question is, take this rule set, this word settled, and place it on those facts that are all decided in your favor, and then ask, is the child settled? And we do that, and it appears we have said that's clear error. Now, we do that in all sorts of different things. We do that in the criminal context and probable cause. Here's a whole bunch of facts. Okay, now we're done. Is there probable cause? Well, that we somehow say, I think we say de novo. And I guess I don't understand why that's different. Although, I mean, I understand the cases say it is, but I just don't understand. Yeah, so could you answer Judge Afrin's question, and then I'll follow up? So, Your Honor, the case law in these Hague circumstances is that when there are facts for a trial court to weigh, the trial court's weighing is not going to be disturbed absent clear error. And the facts that were presented before the trial court included the fact that the minor child had not met Mr. Lucas, who Petitioner calls stepfather. They didn't actually marry until the case was sent. Suppose it was an only mother, and he said he has no relatives here. Correct. Just me and the child. Correct. He goes to school. As much as this child went to school, he's been going for three years. I put him in extracurricular activity. He goes to church, and I live in the same house. You can't be settled in that situation? You can't be worse off for having stepfather who he's got some ties to than he would be if there was no stepfather. So are you saying that if it was a single mother, then automatically not settled? No, Your Honor. Okay, so then that, to me, seems a bit of a red herring, the question of whether he had close ties to this. Unless you're saying something about waiver where their argument below is entirely dependent on the stepfathers and the family of the stepfather. There is precedent that the minor child's ties to family and friends in the new country are to be considered in weighing the well-settled.  And they could only help. They can't hurt. Correct. So if you have other reasons to be settled, the fact that you don't have a lot of family and friends couldn't make you not settled. And our argument is that the trial judge did not clearly err in finding that the other considerations outweighed. That's where we're at. So why not? What is it about the other considerations? Child's in the same school for multiple years, is making some progress, has some extracurricular activities, goes to church, lives in the same house with his parent. So the minor child, the respondent herself testified that the minor child's English was poor. The child missed 19 days of school. His first year here, 10 days the second year. And that's a good trajectory, right? So, yeah, to pile on a little bit with the education, which is the part of the case that actually troubled me the most, the child arrives in the United States in kind of a bad academic position, it seems like, for a young child, and then improves. And then we say at the end of the improvement, not good enough, that goes to your unsettledness, when in fact the reason they've only reached whatever point they've reached is because they started from somewhere that wasn't good. But that has nothing to do with what happened in the United States. Everything that happened in the United States was good. So why is it that we should, at whatever point we stop the clock and say good trajectory, say not good enough, when we have to take from where you started, which is somewhere else? Your Honor, I disagree that the evidence in this case showed that the minor child's education and performance was good enough. In fact, the trial was held in October, I believe, of 2024. What would good enough be, straight A's or A's and B's or, you know, two C's, two B's, two D's and an F? Good enough would certainly not be a child who had already been disciplined for starting a fight in the 2024-2025 school year. If you're a third grader and you're getting in a fight, you can't be settled? I mean, that's a lot of Americans who are not settled. Or has he been getting into more fights? There's extensive... But you agree the teacher said positive trajectory. Judge Burroughs finds positive trajectory. She also found that the minor child was not meeting the curriculum standards. But doesn't that matter from where you start, I guess, is my point. If you're going to focus on positive trajectory and say the kid is helping to translate for other kids, these are all positive things, and says when they came here, they were in really bad shape. And now they're in better shape. That strikes me as settled. That's what you want to see a student doing. So that means good things are happening, which is to me not consistent with where it's the findings Judge Burroughs makes sense. But then the bottom line of that I struggle with. So two points on that, Your Honor. First, the evidence about the minor child's performance in school in Brazil was only that the schools in Brazil were disrupted by COVID. There was no actual evidence about the child's grades or his... I'm not asking for a comparison. The fact is when they came here, at time zero in the United States, they were in an academically weak position. Correct. And then at time zero plus however long they're here, the child's in a better academic position. You agree with that? Yes. Isn't that in favor of the child doing well in the United States, which seems to me to equal at least part of the settled inquiry? No, because the minor child would have been in school in Brazil in his native language, in Portuguese. It's speculation that the minor child's... He could be in Brazil and failing his classes. He could be picking fights every day. We don't know. We're not trying to compare, I thought. I thought your brief was saying that there was no error because we can't compare, but it didn't happen here. So you don't want to defend the position here by saying the comparison comes out well. I'm not trying to compare it, Your Honor, so excuse me if I misspoke. I'm simply saying the argument that he improved in school and that the evidence showed that he improved in school as a factor for him being well settled is not the only factor to take into account. That's true. Here, I don't believe... What's the other weakness? What's the other weakness? So the schooling, Judge Burroughs comes out that that's a weakness. We've sort of aired out whether that was right or wrong. What else was really negative in the fact presentation about how that child's connection to the United States is? The family and friends connections, Your Honor. There was evidence in the record that the minor child had not met mother's new husband's brother or sister-in-law until they came to the U.S. There was evidence... Those don't seem like reasons why, in the absence of other evidence of being settled, those couldn't make up for it. So, I mean, I'm just looking at our other cases. Is it DaCosta? The child here seems more settled than in DaCosta. Correct? I disagree, Your Honor. How is that child more settled? I thought that child was moving around all the time. That child... And it hadn't been in school even as long as this child, right? That child moved only on Martha's Vineyard, and so this... But to, like, four different houses, right? Correct. And the child in DaCosta also had actual blood relatives here in the U.S. His mother's father and his half-brother were here in the U.S. Let me ask it the other way. There's DaCosta on the one in Silva, and DaSilva, the child had emotional inability to connect in the place, which was deemed significant by the district court and then by us in the Court of Appeals. We don't have that here. Is there any case in any circuit where a child with this level of ties has been deemed not settled? Can you think of one? Not off the top of my head, Your Honor. I can... See, that's what just concerns me. I understand the clear error standard, but I worry that that becomes kind of a screen for just not thinking and that the reality is if all these other children seem to be counting as settled and if sort of inherently it seems like they're fairly settled, then even though the district court made no errors on any factual finding, because we've identified this clear error standard, we can't then say, yeah, but what does it ultimately mean to be settled? District court understandably wouldn't be necessarily in the same position that the Court of Appeals would be to figure that out or to set some guidelines, and it would seem helpful to people to know what those guidelines are. There is case law setting forth what the guidelines are for considering whether a child is well settled, and the trial court did assess those considerations here. What case would you be referring to? They're set forth in Dea Redis, which is a Fourth Circuit case. They are the age of the child, the stability and duration of the child's residence in the U.S., school attendance and school performance, friends and relatives here in the U.S., participation in community or extracurricular activities, and the respondent's employment and financial security. In fact, here the trial judge found that the minor child was of a sufficient age to be well settled and that the respondent was employed and financially secure. However, the school attendance, the friends and relatives, and the participation in community and extracurricular activities, the trial judge ruled way against the finding. I guess maybe that's the crux of it. Is there really a case that suggests if you're out 10 days, school attendance weighs against you when your school attendance is improving and you're in your second year of school? That seems like a pretty harsh conclusion. Now, there's lots of tardies, but honestly, there's tardies and there's tardies. It depends. If the homeroom teacher is, you know, you come in one minute late, it's tardy every day. I've had that experience. Or you could have not that experience where, you know, you're coming in halfway through class. Well, that's a much different thing. There's nothing in the record to show us which of those it is. Not because of a fault of the district court's findings. It just doesn't seem like there's any information about what tardy meant. The minor child's attendance was not the only element of the school performance that factored against him. The trial judge found that the minor child was not meeting curriculum standards. And, in fact, many of his grades were that he didn't even understand what the curriculum standards were. She found he got into fights. He was disciplined for spitting on classmates. He was disciplined for hitting classmates. Is that all the first year, just to be clear? That's the school as a whole. It was not. Do we have evidence if it's improving in the good sense and declining in the bad sense? Or no indication? Or is it just continuous and keeps getting, you know, it's steady, steady, steady what's happening? Your Honor, because trial was in October of 2024, it was really early in the child's academic year, it seemed that his performance was better from year one to year two. But, like I said already, in year three he had already been disciplined for a fight, and he had actually already missed four days of school. So he could have missed already 25. We don't know. It's not on the record. Or could have just missed five. We don't know what happened between October and now. You do agree her ultimate finding was positive trajectory. I mean, that was the bottom line. But yet not positive enough to have it count in the mother's favor. And that seems odd to me, I guess. You know, the kid's right, it's up and down. But, like, you're looking at patterns, and this pattern is suggesting this schooling is good for this child. They're doing better. And it seems, if we're using clearly wrong, clearly wrong to pluck out individualized bad moments and then saying, therefore, this is overall bad. When your statement is, it's overall good, but I can pluck out a few things. I think the trial judge's opinion here was very clear how much she wrestled with this case. Yeah, definitely. Your Honor. No, that's true. And the question is whether, to some extent, I guess what we're asking is, is that a problem with our standard of review in some ways, which is when they're wrestling, and the wrestling seems to be over what is the meaning of settled, why do that analysis through the lens of clear error rather than de novo? But for us, that's our problem, not yours. I understand that. Thank you. Go ahead. One last question, which I asked the opposing counsel. The petition here was filed two years after the child was here. Is that something, when it comes to well settled, that could also be factored in? Because had it been filed a year, a month, he's going to the second year. But by the time it's filed, he's already going to his third year. Is that something that could affect it, or it just doesn't play any role? Your Honor, the fact of when the petition is filed, it being more than a year after the child is here in the U.S., that entitles the respondent to set up the well settled defense. If the petition is brought within a year of the minor child's removal, you're not entitled to that defense. But my question is, whether it's a year in and after a year one day, right now it's two years, doesn't that benefit the mother? I would argue that it does give her more of an opportunity to create the conditions that would lead to a child being found to be well settled. I don't think the evidence is here in this case that that's what she did. In particular, the finding that the minor child did not participate in soccer for two years until August of 2024. Thank you. Thank you, Your Honors. Thank you, counsel. At this time, would counsel for the appellant please reintroduce herself on the record? She has a one-minute rebuttal. Thank you, Leah James, again for the appellant. I just want to make one quick point, which is that to the extent that this court is open to examining the standard of review for a mixed question of law and fact, there is a good amount of case law from other circuits in this context where appeals courts have said that the mixed question of law and fact of whether a child is well settled is, in fact, a circumstance where an appeals court should look at the question de novo. Again, I don't want to mislead you. In Da Silva, don't we have a footnote in Da Silva that suggests that we weren't as fully committed to the clear error standard as maybe we subsequently described it in Da Costa? Yes. That footnote, I believe, grapples a bit with the fact that other circuits applied a different standard here and said you didn't see a reason in that case to overturn it. I think here you see why clear guidance may be helpful. Thank you. Thank you. All rise.